CHRISTIAN PETERSON *v.* LEWIS WALSH *and others.*

The penal laws of a State being strictly local in their character and effect, there can be no recovery for an offence under them committed beyond the territorial jurisdiction of the State.

The statute (2 Rev. Stat. 5th ed. 435, § 57), requiring masters of certain vessels coming into the port of New York to accept the services of a licensed pilot first offering his services, and imposing a penalty in case of refusal, cannot control or affect the master of a vessel prior to his arrival within the territorial jurisdiction of the State.

Peterson v. Walsh.

A pilot, therefore, who spoke a vessel three hundred miles at sea, and tendered his services, which were refused, cannot recover pilotage fees under the statute authorizing such actions.

Where, on an appeal from a judgment, by the defendant to the General Term, the facts were agreed on by the parties, and could not be varied by any evidence which might be adduced on a new trial, and a reversal was had,— *Held*, that final judgment for defendants should be given on such reversal.

APPEAL by the plaintiff from a judgment of the Marine Court at General Term.

The facts fully appear in the opinion of the Court.

*H. R. Cummings*, for appellant.

*Charles Donohue*, for respondent.

BY THE COURT.—HILTON, J.—It was admitted on the trial, that the plaintiff is a pilot of the port of New York, duly licensed by the " Board of Commissioners of Pilots," and the defendants are owners and consignees of the ship E. Sherman. That on July 14th, 1859, while the ship was on a voyage from Liverpool, bound to this port, and when at a point in the Atlantic ocean, about three hundred miles east of Sandy Hook light house, she was spoke by the plaintiff, who, then and there, tendered her master his services as such pilot, to pilot her into port, that the master refused to take the plaintiff as pilot, although he was the first one speaking or offering his services as such; the reason then given for such refusal being, that the ship was not on pilot ground. That subsequently, and before her arrival at New York, a pilot was taken and his services were paid for. The ship at the time was drawing twenty feet of water.

Upon these facts the Justice gave judgment in favor of the plaintiff for one hundred and two dollars, and from a reversal of which, by the General Term of the Marine Court, the plaintiff appeals to this Court.

This judgment was based upon section 29 of " an act to provide for the licensing and government of the pilots, and regulating pilotage of the port of New York," passed June 28th, 1853, (see Laws, p. 921), as amended April 3d, 1857. (See Laws, p. 500.; 2 R. S. [5 ed.] 435), the portion of which mate-

rial to be considered, is in these words: " All masters of foreign vessels and vessels from a foreign port, and all vessels sailing under register bound to or from the port of New York, by the way of Sandy Hook, shall take a licensed pilot; or in case of refusal to take such pilot, shall, himself, owners, or consignees, pay the said pilotage as if one had been employed; and such pilotage shall be paid to the pilot first speaking or offering his services as pilot to such vessel;" the rates or fees of pilotage being specified in section 14 of the same act, as amended by chap. 196, of the laws of 1854.

The right of this State to enact such a law cannot now be questioned, although for some time it seemed to be considered a subject of much doubt. See Joint Resolution, Laws 1847, p. 484; also many similar resolutions in previous sessions of our Legislature. The question, however, was finally disposed of and put at rest by the United States Supreme Court, in *Cooley* v. *The Port Wardens of Philadelphia*, 12 Howard U. S. R. 299, decided in 1851. It was there held that although the power to " regulate commerce with foreign nations," &c., contained in the Federal Constitution (see art. 1, sec. 8, sub. 3), includes the regulation of navigation, to which the subject of pilots and pilotage bears an important relation, and that, therefore, their regulation is within the grant to Congress of the commercial power, yet, that such grant does not *per se* deprive the States of all power to regulate pilots and pilotage within their respective territories.

The regulation of commerce comprehends various subjects quite unlike in character, some requiring a single and uniform rule, operating equally upon the commerce in every part of the United States, while others, like the act in question, demand that diversity which alone can meet the local necessities of navigation. In the first class of cases, the power is vested exclusively in Congress, but in the latter, the several States possess the power, controlled, however, by such general regulations upon the subject as Congress may see fit to establish.

I may add that there exists only one instance where it has manifested an intent to interfere with the legislation of the States in this respect, and that is the act of March 2d, 1837 (see Dunlop's U. S. Laws, 924; Stat. at Large, 153), which declares that it shall be lawful for the master or commander of

Peterson v. Walsh.

any vessel coming into or going out of any port situate upon waters which are the boundary between two States, to employ any pilot duly licensed or authorized by the laws of either of the States bounded on the said waters, to pilot said vessel to or from said port; any law, usage or custom to the contrary, notwithstanding.

But although the power to enact this law exists in our State, it has no intrinsic force, and cannot operate *ex propria vigore*, beyond its territory; it being an universal rule, that laws have no force beyond the territories of those who make them. And especially is this rule applicable where the law is but a municipal regulation of a State respecting a subject which is not *mala in se*. 2 Kent's Com. 457; Story's Conflict of Laws, sec. 22, p. 24; Sedgwick on Constitutional Law, 70, 80; *Bank of Augusta* v. *Earle*, 13 Peters, 591, 584.

_ The general jurisdiction of a State extends into the sea as far as a cannon shot will reach, but no further, and this distance is calculated to be a marine league. Bowyer on Univer. Pub. Law, 361; 1 Kent's Com. 29; Vattel, 207, and also an act of Congress, June 5, 1794, ch. 50, recognizing this limitation, by authorizing the District Courts to take cognizance of all captures made within a marine league of American shores. And as penal laws are strictly local in their character and effect, it follows, as a natural and necessary consequence, that there can be no recovery for an offence committed beyond this territorial jurisdiction; the rule being that a State can only punish for offences committed within its limits, and especially is this true of those offences which consist merely in violating its municipal laws and regulations. 1 Phillimore on Int. Law, 356; *Scoville* v. *Canfield*, 14 Johns. 338; *Van Seaick* v. *Edwards*, 2 Johns. Cases, 355.

Besides, the act under consideration, as its title indicates, is but a port regulation, requiring, among other things, that all vessels of a certain class, coming into the port of New York, shall, upon their entering the territorial jurisdiction of the State, accept the services of a licensed pilot, provided such a pilot shall tender his services; and in no proper sense can it be regarded as controlling or affecting the conduct of a master of a foreign vessel prior to his arrival within such jurisdiction. To hold otherwise would, it seems to me, require us to declare

that a pilot duly licensed by our State authority must be accepted by any vessel bound to this port, wherever, upon the ocean or elsewhere, he may see fit to tender his services, whether the tender be made three hundred or three thousand miles distant.

The mere statement of such a proposition refutes itself.

The General Term of the Marine Court was, therefore, right in reversing the judgment, but as the facts were agreed on by the parties, and would not be varied by any evidence which might be adduced upon another trial, in addition to the reversal, there should have been given a final judgment in favor of the defendants.

The case must be sent back to the Marine Court, to the end that the proper judgment may be thereon given.