Larremore, J.
The act to amend the pilot laws, passed April 3, 1857 (Laws of 1857, ch. 243, § 29), provides that££ all vessels sailing under register, bound to,or from the port of New York, by the way of Sandy Hook, shall take a licensed pilot, or in case of refusal to take such pilot the master shall himself or the owner or consignee shall pay the said pilotage as if one had been employed, and such pilotage shall be paid to the pilot first speaking or offering his services to such vessel.”
It was alleged in the complaint, and not denied by the answer, that plaintiff was the first pilot who offered his services to said vessel.
This disposes of one of the questions raised by the argument.
That the conduct of the master amounted to a refusal within the act can admit of but little doubt; and *146 Ms misapprehension as to the location of pilot ground, would not bar plaintiff’s recovery.
The main question presented is whether the master was bound to accept plaintiff’s services at the time they were offered.
Nothing appears in the case to show that “ pilot ground” is clearly defined and prescribed by law.
On the trial witnesses differed as to the precise location, and the testimony on the point being conflicting, the decision of the question thereon cannot be reviewed on appeal.
But it is claimed on the part of the appellant (under the authority of Peterson v. Walsh, 1 Daly, 182), that the place where such offer and refusal were made, being more than a marine league beyond the State lines, the court has no jurisdiction in the premises; that the action being for a penalty under the law of the State, and strictly local in its character, there can be no recovery for an offense under it committed beyond the territorial jurisdiction of the State.
Since that decision was rendered, the case of Cisco v. Roberts (36 N. Y., 292), has been determined by the court of appeals, wherein it was held that this question “is not an issue as to the relative boundaries of State and Federal jurisdiction,” that “the regulations of port pilotage stand substantially on the same footing with our quarantine laws,” and that “it is the right and duty of the State, by appropriate legislation to guard the public health, and the security of general commerce, and to provide against the dangers to which every maritime people are exposed, by intercepting and averting them on the sea without the bounds of exclusive territorial dominion.”
The board of commissioners of pilots are empowered by section 12 of said act, to make, promulgate, and enforce new rules and regulations not inconsistent with the laws of tMs State or of the United States.
*147 •It would appear, therefore, that a pilot in pursuance of such rules and regulations might lawfully claim pilotage for services rendered beyond the territorial limits of State jurisdiction.
Thus, the exercise of such right, as well as the correction of its abuse, are dependent upon the legislation of the board of commissioners of pilots.
That such was the intention of the act in question, the decision in Cisco v. Roberts fairly indicates.
The judgment appealed from must be affirmed with costs. '
Charles P. Daly, Ch. J., and J. F. Daly, J., concurred.
Judgment affirmed.