HORTON (BISSELL v.). See Case No. 1,-448.

## Case No. 6,709.
### HORTON v. SMITH et al.
[6 Ben. 264.] [1]

District Court, E. D. New York. Nov., 1872.

PILOTAGE—CHANNEL OF HELL GATE—TENDER OF SERVICE.

A pilot tendered his services to a vessel to pilot her to New York by way of Hell Gate, the vessel being then to the eastward of Hart's Island. The tender of service being refused, he brought an action against the owners of the vessel to recover half pilotage under the act of the state of New York of 1865 (Laws 1865, p. 197). The respondents excepted to the libel, as not alleging that the vessel was navigating the channel of Hell Gate when the tender was made. *Held,* that the act was applicable to vessels bound to New York, to whom the tender of service was made as far east as Sand's Point, and that the exception was untenable.

[Cited in The Traveller, Case No. 14,147; The Georgia D. Loud. Id. 5,353; The Glaramara, 10 Fed. 679; The Whistler, 13 Fed. 298.]

[This was a libel in admiralty by George W. Horton against Bennet Smith and others, owners of the bark David McNutt, to recover compensation for services as pilot.]

F. A. Wilcox, for libellant.
Benedict, Taft & Benedict, for respondents.

BENEDICT, District Judge. This case comes before the court upon exceptions to the libel. The action is brought by a Hell Gate pilot to recover half pilotage of the owners of the bark David McNutt. The libel alleges that the libellant, a duly licensed pilot, at a point in the East river, on Long Island Sound, to the eastward of Hart's Island, and in the channel, tendered his services to pilot the bark David McNutt to the port of New York, by way of Hell Gate, which service was refused; that the libellant was the first pilot who offered the service, and the bark was, at the time, bound to New York, by way of Hell Gate, and was a foreign and registered vessel drawing fourteen feet of water. To this libel exception is taken on the ground that it does not appear that the libellant tendered his services in "the channel of the East river commonly called Hell Gate," nor that the bark was "navigating the channel of Hell Gate" when spoken by the pilot. The statute

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

of the state of New York, which fixes the rate of compensation to .be. paid. Hell Gate pilots, in the 6th section provides certain rates of pilotage to be paid Hell Gate pilots for piloting any vessel through "the channel of the East river commonly called Hell Gate," and then, in the same section, declares that "any pilot who shall perform any additional pilotage, besides that of piloting through the channel of the East river commonly called Hell Gate, and pilot the same to Execution Rocks or Sand's Point lighthouse, or who shall board any vessel at or to the eastward of Execution Rocks or Sand's Point lighthouse, in Long Island Sound, on her inward passage through Hell Gate, shall be entitled to an additional compensation of seventy-five cents per foot for every foot of water the vessel may draw." And in section 7 it is provided that "any of said Hell Gate pilots who shall first tender his services may demand and receive from the master, owner or consignee of any vessel, of the burden of 100 tons and upwards, navigating the said channel of Hell Gate, and by whom the same shall have been refused, whether inward or outward bound, one half pilotage for every foot of water such vessel may draw, which half pilotage shall be the one half of the rates of compensation established by the sixth section of this act."

On the part of the defence it is contended that, by virtue of these provisions, the liability to pay half pilotage attaches only to such vessels as are boarded and refuse the pilot, when navigating the channel of Hell Gate; and that, while the libel may be considered to aver a tender and refusal to the westward of Execution Rocks and Sand's Point, it locates the place of tender and refusal to the eastward of Hart's Island, and therefore discloses, on its face, that the vessel was not at the time navigating the channel of Hell Gate, within the meaning of the act. I cannot agree to the construction of the statute upon which this argument is based. The 6th section, above quoted, provides for pilotage services by Hell Gate pilots at and to eastward of Execution Rock or Sand's Point, and the act, by its terms, describes a vessel at Sand's Point and bound inward, as on her inward passage through Hell Gate. Moreover, it offers an inducement to pilots to go on board inward bound vessels as far to the eastward as Sand's Point, and it would require clear and positive words to warrant the conclusion, that it was not intended to compensate for services rendered in making a tender at any place westward of that point, as well as for services rendered in piloting the vessel, when the pilot is taken in that part of the Sound. The words "navigating the channel of Hell Gate," where used in the seventh section, do not refer to an actual present navigation of the Gate, but are to be taken as intended to cover any vessel which, approaching the Gate, on a voyage which carries her through it, has reached a point as far to westward as Execution Rock or Sand's Point. Such a vessel is, according to the words of the sixth section of the act, on her inward voyage through Hell Gate, and is a vessel navigating the channel of Hell Gate, within the meaning of the seventh section. It is unnecessary to go further in this case, and determine what would be the effect of a tender made to eastward of Sand's Point, but it may be remarked, as tending to confirm the construction I have given to the statute under consideration, that it is the policy of most pilot laws to induce the pilots to make an early tender of their services to inward bound vessels. The ordinary provision, therefore, is, that extra compensation shall be given if the tender be made as far out as a designated line, without fixing any limit, beyond which an effective tender may not be made. See the statutes of New York, and also those of Massachusetts. State boundaries have been sometimes considered as furnishing the outward limit (1 Daly, 185), although Sandy Hook pilots are sought for, and their services taken, much farther out than a marine league. In France it has been adjudged, in regard to vessels bound to Havre, that the pilots may board such vessels at any time or distance out, and the liability to take a pilot has been adjudged to attach to a French ship although she was at the time in English waters, as at the Downs. Cour. Cass. D. 1866, p. 303; Caumont, Traité Pilote, 31. The present case does not, however, call for any determination as to the effect of a tender made to eastward of Sand's Point, and no opinion is expressed as to the law of such a case. Here the tender was made to westward of Sand's Point, where simple pilotage would have been due if the pilot had been taken, and for the tender which was so made half pilotage is due. The exceptions are overruled, and a decree will be entered in favor of the libellant, with liberty to answer within ten days, on payment of costs of the hearing.