Opinion of the Court—Burnett, J.

GRANT COUNTY, RESPONDENT, v. F. C. SELS, APPELLANT.

ILLEGAL PAYMENT TO COUNTY OFFICER MAY BE RECOVERED.—Money claimed by and paid to a county officer under a claim of right for his services as such, if he be not entitled thereto, is an illegal payment and may be recovered back by the county.

CONSTITUTIONAL ACT.—The act of October 26, 1870, fixing the salary of the county judge of Grant County at eight hundred dollars per annum is not unconstitutional.

STATUTE MAY BE REPEALED BY IMPLICATION.—When two statutes are inconsistent and repugnant so that both cannot stand, the one last enacted shall be considered in force, and to repeal by implication all prior acts or parts of acts that conflict with it.

*Per Bonham, Chief Justice, dissenting.*

AMENDMENTS BY IMPLICATION.—Section 22, Art. IV of the State Constitution, prohibits amendments by implication. Every law as *amended*, should not only show in itself what the law in force on that subject is, but it should be a direct index to the law which has been superseded.

| 5 | 243 |
| 5 | 393 |
| 9 | 63 |
| 10 | 226 |
| 10 | 229 |
| Continued. | |
| 10 | 533 |
| 10 | 537 |
| 20 | 347 |
| 22 | 360 |
| 25* | 728 |
| 30* | 76 |
| 5 | 243 |
| 32 | 439 |
| 5 | 243 |
| 39 | 536 |
| 5 | 243 |
| 46 | 331 |

APPEAL from Grant County.

The facts are stated in the opinion of the Court.

*B. Whitten and Thayer & Williams*, for Appellant.

*John Catlin and B. Killen*, for Respondent.

By the Court, BURNETT, J.:

The complaint in this case alleges that the respondent is a public corporation and a county in the State of Oregon, duly organized according to the laws thereof, under the name of Grant County. That on the first Monday in June, 1870, the appellant was duly elected judge of said county, and thereafter, on the first Monday in July, 1870, duly qualified according to law and entered upon said office, and that he continued as such officer until the first Monday in July, 1874. That during his said term of office, to wit, from the first day of July, 1872, to the sixth day of July, 1874, the said appellant had and received from said county, without any consideration whatever, in warrants drawn upon the treasury of said county, the sum of eight hundred dollars. That said sum was taken and received by defendant (appellant) from

said county upon a pretended right that he was entitled to have and receive from said county an annual salary of one thousand two hundred dollars as compensation for his services as judge of said county, for said time, when, in truth and in fact, the defendant (appellant) was, from the first day of July, 1872, until the sixth day of July, 1874, only entitled by law for said services to the annual salary of eight hundred dollars and no other or greater sum. Then follows a list of the county warrants alleged to have been drawn in favor of the appellant, and received by him, for the two years from July, 1872, to July, 1874, and amounting altogether to the sum of $2400 (eight hundred dollars of which, it is alleged, was issued without authority of law), and demand for judgment for eight hundred dollars and interest.

To this complaint appellant by counsel interposed a demurrer in the court below, upon the grounds: (1.) That plaintiff (respondent) has no legal capacity to sue in this action, in this, that § 346, pages 234 and 235 of the Code, inhibits plaintiff from prosecuting actions of this nature. (2.) That the complaint does not state facts sufficient to constitute a cause of action.

The court below overruled the demurrer, and rendered judgment in favor of Grant County, the plaintiff therein, for the sum of eight hundred dollars, but did not allow any interest thereon.

The defendant appeals, and assigns in his notice of appeal the following grounds of error: (1.) That the court erred in deciding that the law of 1870 did not repeal, revise, or amend the law of 1868, relating to the salary of the county judge of Grant County, Oregon. (2.) That the court erred in not deciding that the law of Oregon, passed 1870, in relation to the salary of the county judge of Grant County, was unconstitutional and void. (3.) That plaintiff had no legal capacity to sue.

The principal question presented to the Court by this appeal is, whether the act of the Legislature of October 26, 1870, entitled "An Act to regulate the salaries of county judge and county treasurer of Umatilla and Grant Counties,"

is void or not, as being contrary to § 22, Art. IV of the Constitution.

The section above referred to reads as follows: "No act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length."

It is a well-settled rule, and one that has been more than once announced by this Court, that before a statute will be declared unconstitutional it must appear very clearly to be so. The opposition between the Constitution and the law should be such that the judge feels a strong and clear conviction of their incompatibility with each other. (*Fletcher* v. *Peck*, 6 Cranch, per Marshall, C. J.)

Mr. Justice Washington, says Cooley in his work on Constitutional Limitations, gives a reason for this rule which has been repeatedly recognized in other cases which we have cited. After expressing the opinion that the particular question there presented, and which regarded the constitutionality of a State law, was involved in difficulty and doubt, he says: "But if I could rest my opinion in favor of the constitutionality of the law on which the question arises, on no other ground than this doubt, so felt and acknowledged, that alone would, in my estimation, be a satisfactory vindication of it. It is but a decent respect due the wisdom, the integrity and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity until its violation of the constitution is proved beyond all reasonable doubt." (*Ogden* v. *Saunders*, 12 Wheat. 270.)

The authorities are uniform upon this subject, giving the acts of the Legislature the benefit of a reasonable doubt.

If, then, we are to hold that the act of 1870, heretofore referred to, is void, it must appear, after a careful examination, to be in plain violation of that section of the Constitution above referred to. We are not prepared to say that such is the case. There may be some doubts about it, and that is as far as we can go; and, being in doubt, we feel bound, in the language of Mr. Justice Washington, to resolve that doubt in favor of the validity of the law in ques-

tion, and to hold that the law of 1870, fixing the salary of the judge of Grant County at eight hundred dollars, is valid, and repeals by implication all prior acts, or parts of acts, that conflict with it. The doctrine of repeal by implication is not prohibited by our Constitution, and has been recognized and adopted by this Court in the cases of *State* v. *Benjamin* (2 Or. 125); *Fleischner* v. *Chadwick,* ante, p. 152, and *Hurst* v. *Hawn,* post, p. 275.

The Constitution of the State of Missouri has a similar provision to that in § 22, Art. IV of our Constitution, and the Supreme Court of that State, having that provision before them in the case of *State of Missouri ex rel. C. Maguire, Relator,* v. *Daniel M. Draper, State Auditor, Respondent* (47 Mo. 29), says: "Counsel for relator, to sustain the position that the constitutional mode of amending laws has not been complied with, refers to Article IV, § 25, which provides that 'the act revised or re-enacted, or the act or part of act amended, shall be set forth and published at full length, as if it were an original act or provision.' * * * The statute under consideration, however, does not purport in terms to amend or repeal any particular act or section, and can only be held to have that effect by implication."

The court further says: "Counsel urge upon our consideration the embarrassments and inconveniences arising from attempting to amend by implication such important statutes as those pertaining to revenue, and show that the doubts and uncertainties as to what is really the law, against which the constitutional provision referred to was provided, still exist if such implied amendments or repeals are sustained.

"We are fully aware that doubts and uncertainties not only must exist from imperfection of language and want of foresight, but also are often created by the careless or inconsiderate action of legislative bodies. But still we can not pronounce that action illegal, and invalidate the enactment, unless it plainly contravenes some constitutional provision.

"The Constitution has gone so far as to prohibit amend-

ments in terms, except in a particular way, but it has not prohibited amendments by implication. It has not said that when an act is passed inconsistent with a preceding one, so that both cannot stand, the latter one shall be void and the earlier one shall prevail, but has left the law as it always has been, viz., that when two statutes are inconsistent and repugnant, the one last enacted shall be considered in force. This must be so, in the nature of things, for the last enactment is the latest expression of the legislative will, and must prevail, unless it contains some inherent vice that prevents it becoming a statute. In many cases it would be difficult, if not impracticable, to re-enact and repeal all statutes inconsistent with a new enactment.

*     *     *     *     *     *     *     *     *

Counsel have cited no authorities which deny the power of repeal by implication, and I have been unable to find any. On the other hand cases are numerous, and that have arisen under constitutions like our own, where such repeals are sustained."

Again, in the same opinion, it is said: "The Constitution is silent upon the question of implied repeals; and whether or not, as so elaborately argued by counsel, the same evil results from allowing such repeals as those specially provided against in that instrument, we cannot create a new prohibition, or give the present one a scope beyond its import and beyond the construction universally given it."

It is claimed, by counsel for appellant, that this case falls within the case of *Stock* v. *The City of Portland* (2 Or. 69); but this is a mistake, for in that case the act in question was entitled "An Act to amend an Act entitled 'An Act to incorporate the city of Portland;'" and the court say it was an attempt to amend an existing law by mere reference to the title, without setting the same forth at full length as amended, showing an entirely different case from the one at bar.

The next point upon which error is assigned is, that the county has not legal capacity to sue. We are disposed to treat this action as for money had and received, and think the action can be maintained under subdivision 1 of § 346

of the Code; for if the appellant received county orders of the value of eight hundred dollars which he has no right to retain, there would be an implied contract raised by the law in favor of the county, and against the appellant, upon which it could sue. It was further argued, by counsel for appellant, that this was a voluntary payment by the county to the appellant, and that the county cannot recover it back. It is, perhaps, a sufficient answer to this position to say that no error has been assigned on this point, and though the demurrer in the court below contained an objection to the complaint on the ground of its insufficiency, yet the appellant seems to have abandoned that point on his appeal, and the rule is well settled that the appellant can only correct those errors assigned in his notice of appeal, in an action at law. But, admitting there was a proper assignment of error on this point, or that that point could be raised for the first time in this Court, I do not think a county is in any manner bound by the illegal act of one of its officers. The duties of such officers are pointed out by law, and if they go beyond them their acts are void. If the clerk issues county orders on the county treasury, either with or without directions from the County Court, that there is no authority in law for issuing, they are void. The party who takes such warrants obtains no advantage that will estop the county from asserting her rights and refusing to pay them, or from recovering back their value if the party refuses to surrender them.

In the case of *People* v. *Supervisors of El Dorado County* (11 Cal. 170), the Supreme Court of the State of California held that the board of supervisors of a county possess no power to allow the county auditor compensation for the issuance and cancellation of warrants drawn on the county treasurer; that such a claim is not authorized by law, and the power of the board to allow accounts against the county is confined to those legally chargeable; that county warrants acquire no greater validity in the hands of third parties than they originally possessed in the hands of the first holder, no matter for what consideration they may have been trans-

ferred, or in what faith they may have been taken.    If illegal when issued they are illegal for all time.

There is no doubt of the general rule of voluntary payments, as claimed by appellant's counsel, but that such does not apply to the case at bar seems to be well sustained by reason as well as by the authorities.    In the case of the *American Exchange Fire Insurance Company* v. *Britton et al.* (8 Bos., N. Y. Rep. 149), it is held that money exacted by and paid to public officers under a claim of right for their services as such, if they be not entitled thereto, is illegally exacted and may be recovered back, and that such a payment is not a voluntary payment.

Judgment affirmed.

BONHAM, C. J., dissenting:

I regret that I have not been able to agree with my brethren in the conclusions arrived at in this case.    While I fully concur with them in the rule of construction, as stated, that a law ought not to be declared unconstitutional and void by the courts until it is clearly made to appear that it contravenes some provision of the fundamental law, yet to my mind the act in question does this beyond any reasonable doubt.

Section 2 of the act of October 24, 1868, fixes the salary of the county judge of Grant County at one thousand two hundred dollars, and the other provisions of the same section fix the salaries of all the other county judges in the State at the sums therein stated respectively. (Session Laws, 1868, p. 9.)

Section 1 of the act of October 24, 1870 (Session Laws, 1870, p. 62), undertakes, without even referring to the title of the act of 1868, to amend § 2 of said act by altering or changing its provisions, so far as the same refer to the salary of the county judge of Grant County, leaving the remaining portion of said § 2, so far as the same provides for the salaries of all the other county judges in the State, as the existing law on that subject.

Section 22 of Article IV of the Constitution of this State declares, "No act shall ever be revised or amended by mere

reference to its title, but the act revised or section amended shall be set forth and published at full length."

What is meant by the amendment of a section of a law? I maintain that it means to alter or change such section by adding something to or taking something from such section, or in some way modifying some of its parts or provisions, leaving the remainder thereof to stand as valid and operative law. If I am correct in this, the corollary follows that the act of October 24, 1870, operates as an amendment of § 2 of the act of October 24, 1868. But it is argued by counsel for respondent that the act of October 24, 1870, does not profess to amend § 2 of the act of October 24, 1868. In other words, that it is not in terms declared to be amendatory of such section, and that it does not refer to the title of the act of 1868, and therefore it does not fall within the inhibition of § 22 of Article IV of our State Constitution, and does not contravene its provisions. To my mind, this argument is briefly but pertinently answered by counsel for appellant when they say, "If mere reference to its title is insufficient, certainly no reference at all would be much more fatal."

It appears to me that the mischief intended to be obviated by § 22 of Article IV of our Constitution is materially lessened where the amendatory act refers to the title of the act proposed to be amended, from what it would be where no reference at all is made; because such reference furnishes an index to the act to be amended, although it does not come up to the requirements of the Constitution, by pointing out the specific part of such act which is amended, and by setting the same out word for word as it will read when amended. The object of the framers of our Constitution in prohibiting amendments by mere reference to the title of the act amended, I apprehend was to interdict the usual practice of accomplishing amendments in that manner, which by the customs of legislation had obtained when and where no such constitutional prohibition existed against it. The word *mere* suggests diminution, and is defined to mean, " Only this, and nothing else; such and no more; simple, bare." (Webster.) And if *mere* reference

to the title, and nothing more, is insufficient, certainly a more objectionable form of proceeding, where the amendatory act furnishes no index whatever to the act amended, ought to be prohibited, and in my judgment was intended to be by the section of the Constitution referred to. That which clearly appears to be within the spirit of the rule is within the rule.

Section 22 of Art. IV of the Constitution was doubtless intended to accomplish a twofold object:

1. To require legislators, before proceeding to tamper with a law by ingrafting amendments upon it, to know by a direct reference to such law, as it is written, what are its provisions, so that they may intelligibly vote upon its amendment.

2. That when the harmony and proportions of an act are destroyed by the revisal of the same, or where a like result occurs to one or more sections of an act by an amendment of the same, such harmony shall be restored in the amendatory act, by setting out the act as revised, or the section or sections as amended, so that each will be perfect and complete within itself, in order that the people, who are required to know the law, may be furnished with the means of finding it out. Every law, as amended, should not only show in itself what the law in force on that subject is, but it should be a direct index to the law on that particular subject which has been superseded and which is not in force.

The case of *State of Missouri ex rel. Maguire* v. *Draper, State Auditor* (47 Mo. 29), cited in support of respondent's position on this question, I concede appears to be a case in point; but, with due respect for the wisdom of the court rendering that decision, it does appear to me that the reasoning of the court is subject to criticism, and that it cannot be sustained either upon principle or in the light of the preponderance of the authorities on this question. The court in that case say: "The Constitution has gone so far as to prohibit amendments in terms, except in a particular way, but it has not prohibited amendments by implication." The provision of the Missouri Constitution in question reads: "The act revised, re-enacted, or the act or part

of act amended, shall be set forth and published at length as if it were an original act or provision." If the doctrine of the Missouri case referred to is correct, all that a legislator need do to *evade* the operation of this constitutional provision is, to proceed directly to enact a law which, to all intents and purposes, is in effect amendatory of a preexisting law, without in terms naming the amendatory act as such, and the object is accomplished and the act is amended by *implication,* the very thing which the framers of the Constitution intended to prohibit.

To my mind this appears to be a sacrifice of *substance* to matter of *form,* and a surrender of the spirit of the constitutional provision in question to excessive technicality. I cannot believe that it was ever intended by the framers of a constitutional provision like this, which was intended to prevent a mischief of such great magnitude, that the effects intended to be avoided might be accomplished by indirection in the manner suggested. It is, in my judgment, wholly. immaterial whether the act is *eo nomine* amendatory or not; the evil against which the constitutional provision in question was directed, is amendments which are such *in effect,* and is not limited to those which are so *named* in the title or preamble of the act.

The decision of this Court, in *The City of Portland* v. *Stock* (2 Or. 69), as I read and construe it, is decisive of the same question presented in the case at bar. It is true that the act in question, in that case, was in *terms* amendatory of the charter of the city of Portland, but Mr. Justice Wilson, in announcing the opinion of the court, did not seem to attach any importance to that circumstance, but proceeded directly to the consideration of the *nature* and *effect* of the act in question by saying: "The first question for determination is, whether § 7 of the act of October 15, 1862, operates as a revision or an amendment of any part of the charter of the city, passed January 24, 1854, and if so, of what part?" And, after a review of the law and facts of the case, the court concludes, "that the act of 1862 is a statute which operates as an amendment to the charter," and is therefore void. And again, in *Arnoult* v.

*New Orleans* (11 La. 56), which is cited by Mr. Justice Wilson in *City of Portland* v. *Stock,* the law on this subject appears to me to be very clearly expressed in these words: "It was intended that each amendment, and each revisal, should speak for itself; should stand independent and apart from the act revised or the section amended. It was, therefore, provided that, in such cases, if the *object* was to *revise* an act, it should be re-enacted throughout; and if the *object* was to *amend* an act, then the section *amended* should be re-enacted and published."

I have regarded *Portland* v. *Stock* as a well-considered and decisive case on the question determined by it, and do not think that its authority has been directly shaken, or materially qualified by this Court, until the decision of this case. I might pursue this subject much further by a review of the authorities which have been cited on the interesting questions presented in this case; but without deeming it advisable to express an opinion on any of the questions involved, other than the one which I have hurriedly attempted to discuss, I will conclude my unpleasant task of writing a dissenting opinion by only adding that I have always regarded ? 22 of Art. IV of our Constitution as a monument of the wisdom of the framers of our fundamental law; and without the strict enforcement of its provisions it would be a violent presumption that any one, much less *every one,* should know the law, and the maxim *ignorantia legis neminem excusat* would soon become regarded as exceedingly harsh if not tyrannical in its application.