## Case No. 12,291b.

### The S. & B. SMALL.

[8 Ben. 523.] [1]

District Court, E. D. New York. Oct., 1876.

PILOTAGE—IN THE SOUND — LIMIT OF DISTANCE—
COSTS.

1. P., a pilot, offered his services to a schooner bound through Hell Gate, at a point as far east as a line S. S. E. from Block Island, and was refused; and afterwards B., another pilot, offered his services to the same vessel off Oak Neck, and was also refused, and thereupon B. libelled the schooner to recover half-pilotage under the statute: and it was alleged in defence that, after arriving at New York, the schooner settled the claim of P. by paying him a sum less than half-pilotage, and that B. was not the first pilot to tender his services and could not recover: *Held*, that it is not reasonable that Hell Gate pilots may make legal tender of service as far east as Block Island, where their services cannot possibly be needed.

[Cited in The Glaramara, 10 Fed. 680.]

2. The tender of service by P. was not valid, and therefore the tender by B. was the first one legally made.

3. The controversy being forced upon the vessel by two pilots to settle their conflicting claims, no costs would be given to the libellant.

In admiralty.

Beebe, Wilcox & Hobbs, for libellant.
A. J. Heath, for claimants.

BENEDICT, District Judge. This is an action by Alexander Banta, a Hell Gate pilot, to recover half-pilotage. The libel avers a tender of services in Long Island Sound, off Oak Neck, to the schooner S. & B. Small, a vessel then bound through Hell Gate, drawing 10 feet of water. It is also averred that the libellant was the first to tender his services, and that they were refused.

The answer admits that the schooner was bound through Hell Gate, as alleged, and that the libellant is a duly licensed Hell Gate pilot. It denies the other allegations of the libel and specially that the libellant was the first pilot to tender his services for the voyage in question, and avers that the first tender was made by a pilot named Charles H. Palmer, who demanded and was paid half-pilotage by reason of such tender and refusal. The evidence on the part of libellant proves the tender of services by the libellant on the 28th of July, off Oak Neck, and refusal thereof, as averred in the libel.

The evidence on the part of the claimants proves that on the 26th day of July, this vessel, when about south-south-east of Block Island, bound to the Sound, was boarded by the Hell Gate pilot, named Palmer, and a tender of services to pilot her through the Gate was then made and refused; that such a tender and refusal had been made the basis of a demand for half-pilotage by Palmer, and that, after the vessel had passed through the Gate and arrived in New York, and after

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

notice of the libellant's demand, the master of the vessel had compromised the demand of Palmer by paying a sum less than half-pilotage.

Upon the facts, the question of law arises, whether a Hell Gate pilot can make a legal tender of his services, to pilot a vessel through Hell Gate, to a vessel at the time not in the Sound although destined thereto.

I have on former occasions adverted to the difficulty in fixing a limit to the distance from port at which a pilot may tender his services, and I have also had occasion to refer to cases showing the policy of the pilot laws to be in general to encourage early tender of pilot services. I do not, however, think that the principle can be carried so far as to support the tender set up in this case by way of defence.

It seems reasonable to say that the master of a vessel cannot be required to determine whether he will or will not accept the services of a pilot, when his vessel is so far distant from the channel, as to which the pilot is supposed to be informed and for which his services are needed, that the presence of a pilot on board for the purpose of navigating those channels would, under all possible circumstances, be absurd. A pilot may well be taken when those channels are shortly to be navigated, and it would not be unreasonable to take a pilot in time to enable him to ascertain the capacity of the vessel and her ability to work before reaching those channels. But to take a pilot near Block Island for the purpose of navigating Hell Gate in safety would be no proper precaution, but a foolish act under all circumstances.

In this case the evidence is, that while some few pilots have made tenders not far from Block Island, rather, as I apprehend, for the sake of being refused than with the intention of piloting the vessel, it is not usual for vessels to take pilots there, and no sort of necessity exists for the presence there of a Hell Gate pilot. The result of upholding a tender there made would therefore be to induce the Hell Gate pilots to withdraw themselves from the locality where the law supposes there is need of pilots' services, in order to betake themselves to Block Island for the purpose of intercepting the ships with a tender of services there, where by no possibility can their services be required. It therefore seems more reasonable to conclude that the master of this vessel was under no obligation to determine whether he would or would not have a pilot through Hell Gate, when his vessel was as far east as a line south-south-east of Block Island; and that he did not become liable to pay half-pilotage by reason of his refusing to accept the services tendered at that place by Palmer.

It follows that the libellant was the first pilot to tender his services within the meaning of the law, and he is consequently entitled to his half-pilotage. I shall not, however, give him costs, for I consider that the

controversy is one forced upon the vessel by a difference of opinion between two Hell Gate pilots as to their respective rights.

Let a decree be entered for the half-pilotage demanded, but without costs.