MAYER, Ex parte. See Cases Nos. 14,245 and 14,246.

---

## Case No. 9,340.

### MAYER v. CAHALIN.

[5 Sawy. 355; 7 Reporter, 327; 11 Chi. Leg. News, 176.] [1]

Circuit Court, D. Oregon. Jan. 7, 1879.

STATUTES—TITLE—ATTACHMENTS—BODY OF ACT—REPEAL BY IMPLICATION.

1. The subject of an act is expressed in the title thereof, although the provisions in the act concerning the subject may be different from what may be inferred from or suggested by such title.

2. A provision in an act concerning the dissolution of attachments is a matter properly connected with the "subject" of disposing of an insolvent debtor's property.

[Cited in Hahn v. Salmon, 20 Fed. 810.]

3. Where the title of an act states that it is to provide a just disposition of an insolvent debtor's property, it cannot be maintained that the "subject" of the act is not expressed in the title, because the disposition of such property provided for in the body of the act is, in the opinion of the court, not just.

4. A repeal by implication is as much within the purview of section 22 of article 4 of the constitution of Oregon, and the mischief intended to be prevented by it, as an amendment in terms; but it appearing that the supreme court of the state has decided otherwise, this court follows such decision.

[Cited in The Glaramara, 10 Fed. 681.]

Action [by Daniel Mayer against E. Cahalin] to recover money.

John W. Whalley and M. W. Fechheimer, for plaintiff.

Joseph N. Dolph and Raleigh Stott, for defendant.

DEADY, District Judge. This action is brought by the plaintiff, a citizen of California, against the defendant, to recover the sum of seven thousand nine hundred and sixty-seven dollars and ninety-three cents, the balance due upon certain goods, wares and merchandise theretofore sold and delivered to him. On December 23, 1878, the plaintiff sued out an attachment, upon which the marshal took the defendant's stock in trade into his possession.

The defendant now moves to dissolve the attachment, upon the ground that on December 30, 1878, he made an assignment of all his property, of the value of twelve thousand nine hundred and seventy-nine dollars and fifty-five cents, to an assignee for the benefit of all his creditors, in proportion to the amount of their several claims amounting in the aggregate to twenty-one thousand three hundred and thirty-eight dollars and fifty-two cents, in accordance with the provisions of the act entitled "An act to secure creditors a just division of the estates of debtors who convey to assignees for the

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 7 Reporter, 327, contains only a partial report.]

benefit of creditors," approved October 18, 1878; and that on January 7, 1879, the assignee aforesaid demanded of the marshal the property taken on said attachment, which he refused to surrender.

This act (Sess. Laws 1878, p. 36) provides that no general assignment for the benefit of creditors shall be valid unless made for the benefit of all the creditors pro rata; and that "such assignments shall have the effect to discharge any and all attachments on which judgment shall not have been taken at the date of such assignment." It may be remarked, in passing, that judgments are not taken on attachments, but are given in actions wherein attachments may be or have been issued.

By section 933 of the Revised Statutes an attachment of property in the national courts to satisfy any judgment that may be recovered therein, "shall be dissolved when any contingency occurs by which, according to the laws of the state where said court is held, such attachment would be dissolved upon like process in the courts of the state."

Upon this section counsel for the plaintiff admits that if the act of October 18, 1878, aforesaid, is valid, this motion must prevail; but maintains that this act is unconstitutional and void because (1) it was passed in contravention of section 20 of article 4 of the constitution—the subject thereof not being expressed in the title; and (2) it was passed in contravention of section 22 of said article—certain sections of the Code on the subject of attachments being thereby amended without being set forth and published at full length.

The first objection is sought to be maintained by showing that while the "subject" expressed in the title of the act is the just division of a debtor's property among his creditors—in effect, the body of the act provides for or permits a very unjust distribution of said property. For instance, while it provides that an assignment shall dissolve an attachment, it leaves judgments by confession, which may have been made in the mean time, or at any time, for the very purpose of preventing a just distribution of the property, in full force. Upon these judgments, executions may issue and be levied upon all the property of a debtor, and leave nothing for the assignment to operate on—its only effect in such case being to dissolve the attachment for the benefit of the creditors who have, with the assistance of the debtor, obtained judgments by confession. Besides, it provides that the assignment shall not pass any property not mentioned in the inventory, thus leaving such property liable to be taken on attachment by any creditor after the assignment. The effect of this is practically to invite and legalize a partial and fraudulent compliance with the act itself.

Evidently the object of the act was to prohibit insolvent debtors from preferring one creditor to another, and so far it is not obnoxious to the charge that its subject is not expressed in its title. But it must be admitted that in practice it will not accomplish such purpose, and that most probably it will operate as counsel contend—to secure an unequal, and, therefore, an unjust, distribution of a debtor's property.

But I do not think that a court can say that the "subject" of an act is not expressed in its title because it may appear that, owing to unintentional errors and imperfections in its composition, its practical operation may be somewhat or altogether different from what was expressed or intended. Besides, what constitutes a just distribution of a debtor's property is a subject about which a variety of opinions may be entertained, and as to which there is no absolute or fixed standard to which we may refer as authority.

The "subject" of this act is the distribution of an insolvent debtor's property among his creditors in a certain contingency, and beyond a doubt so much is expressed in the title. It also purports that such distribution is just—that is, according to the understanding of the legislative assembly—which I do not think is subject to judicial review.

It is also urged against the act under this head, that the "subject" of attachments is not expressed in the title, though embraced in the body of the act, and, therefore, it is so far void. But I think the dissolution of attachments is certainly a "matter properly connected" with the "subject" of the distribution of an insolvent debtor's property—particularly in a country where such property may be liable to attachment at the suit of a creditor—and, therefore, need not be otherwise expressed in the title.

As to the second objection: Section 22, aforesaid, provides that "no act shall ever be revised or amended by mere reference to its title, but the act revised, or section amended, shall be set forth and published at full length." In answer to this objection, counsel for the defendant insist (1) that the act in question does not amend any existing act; and (2) that if it does, it is only by implication, and such an amendment is not within the purview of this provision of the constitution as construed by the supreme court of this state; citing Fleischner v. Chadwick, 5 Or. 153; Grant Co. v. Sels, Id. 243; Hurst v. Hawn, Id. 279.

I think the act does amend the Code as to the effect and discharge of attachments. It is not merely cumulative, as was the case in State v. Berry, 12 Iowa, 59, cited by counsel for defendant. It changes, limits and restrains the operation of section 142 of the Code so that the property taken on an attachment is no longer held as an absolute "security for the satisfaction of such judgment" as the plaintiff may obtain, but only upon condition the defendant in the meantime does not make an assignment, which he is almost certain to do, unless he is in collusion or friendly co-operation with the attaching creditor. The same is true of section

159. In effect this section by a reference to sections 128, 129, provides that an attachment shall not be discharged or dissolved unless it satisfactorily appears that there was not sufficient cause for its allowance—that it was issued wrongfully. But this act provides that it shall be discharged if the debtor makes an assignment before judgment.

In short, the provisions of the Code in relation to the effect of an attachment upon property taken thereon as security for a judgment and the dissolution thereof prior to judgment and the provisions of the act cannot co-exist. The application of one to the subject necessarily excludes the other. They are plainly repugnant to one another. The provisions of the Code are by this act rendered null and of no effect whenever the defendant wills it to be so.

Upon the question of whether the act was passed contrary to section 20 aforesaid, counsel for the plaintiff insist that the decisions of the supreme court of the state cited from 5 Or.. supra, are not in point; that they only decide that a statute may be repealed by implication, but not that it may be so amended. But in Grant Co. v. Sels. which is the case most relied on, while the court speaks of a repeal by implication, and not an amendment, the facts of the case, by the light of which the language of the court is always to be read, show that it was a case of an amendment of a section, and not the repeal of a statute.

In City of Portland v. Stock, 2 Or. 70, and Dolan v. Barnard, 5 Or. 391, the court held the amending act void. But in each of these cases the act purported to be an amendatory one. Yet in City of Portland v. Stock no weight is attached to that fact, and the supposed difference between repeals in terms and by implication is not even noticed. Neither is any significance attached to the fact in Dolan v. Barnard, where the act under consideration is said to be "not only amendatory in terms," but so "in its nature and effect."

For myself. I have a decided conviction upon the question. I agree heartily with the able dissenting opinion of Chief Justice Bonham in Grant Co. v. Sels, and especially when he says: "It is, in my judgment, wholly immaterial whether the act is eo nomine amendatory or not: the evil against which the constitutional provision in question was directed, is amendments which are such in effect, and is not limited to those which are so named in the title or preamble of the act."

It is said that the constitution is silent upon the subject of implied repeals. But it is no more silent upon that subject than upon repeal in terms. The fact is it speaks specifically of neither, but uses the term "amend" without qualification or limitation, and thereby includes both modes of amendment or repeal, and one just as much as the other. As I read it. the constitution does not contemplate any such immaterial distinctions as amendments in terms and by implication. In effect it says that an amendment of a statute shall not be valid unless the section amended is set forth and published at length. The evil intended to be prevented by this section of the constitution is a very serious one, and unless amendments by implication, which are more mischievous than those in terms, are held to be within its purview. the provision is practically nullified. The average legislator will never take the risk or trouble of amending a statute by name, when he can avoid both by doing it by implication—without professing to do so.

But while I have felt at liberty to throw out these suggestions on the subject, my duty is to follow the ruling of the supreme court of the state upon a question involving the construction of the constitution of the state. And while there may be some ground for the argument, that as the last case on this subject decided by the supreme court—Dolan v. Barnard, supra—ignores the distinction between repeals in terms and by implication, yet, I think. that that being a case in which the act purported to be amendatory, I am not at liberty to assume that the case of Grant Co. v. Sels, supra. is thereby overruled, and must, therefore, hold upon the authority of that decision that this act is valid. This being so, the attachment is dissolved; and it is so ordered.