## THE GLARAMARA.

*(District Court, D. Oregon.   February 28, 1882.)*

1. TENDER OF PILOT SERVICE.

>    *Semble* that a tender of pilot service by a river pilot, to a vessel bound on a voyage to Portland, is not valid if made below Astoria, and before the vessel has reached the pilot-ground of such pilot.

2. AMENDMENT OF STATUTE.

>    *Semble* that section 1 of the act of December 20, 1865, (Sess. Laws, p. 33; Or. Laws, p. 707, § 12,) giving half pilotage for a tender of pilot service to a vessel navigating the Columbia or Wallamet rivers above Astoria, was passed in contravention of section 22 of article 4 of the constitution of the state, and is therefore void; but if considered valid, then section 1 of the act of October 25, 1870, (Sess. Laws, p. 51; Or. Laws, p. 710, § 27,) declaring that such vessel, when "towed by a tug or steamer," should not be required " to take a pilot or pay half pilotage," is also valid, and therefore a pilot is not entitled to recover half pilotage for a tender and refusal of pilot service.

*Rufus Mallory,* for libellant.

*William H. Effinger,* for respondent.

DEADY, D. J.   This suit is brought by the libellant, W. A. Betts, a river pilot, to recover the sum of $34 as half pilotage for a tender of services as such pilot to the bark Glaramara.

The libel alleges that on September 18, 1881, the Glaramara, a foreign ship of 800 tons burden, was in the Columbia river below Astoria, bound on a voyage to Portland, when the libellant, a duly-qualified and licensed pilot for the Columbia and Wallamet rivers above Astoria, duly offered his services to the master of said vessel to pilot her to Portland, which offered was refused, although said vessel had no river pilot on board, nor had she then been spoken by any one; and that said vessel made the voyage to Portland and arrived here about six days thereafter.

The master, Robert Morton, on behalf of the owners and claimants, George Nelson & Sons, White Haven, England, excepts to the libel because it does not appear therefrom that the libellant is entitled to have any sum as pilotage from said bark.   The exception does not state specifically, as it ought, wherein the libel is defective, but upon the argument it was contended (1) that the tender of services being made below Astoria, off the libellant's pilot-ground, was therefore insufficient and of no effect; and (2) that it does not appear whether said voyage of said vessel to this port was made under sail or in tow.

By the law of Oregon (Sess. Laws 1865, p. 33; Or. Laws, p. 707, § 12) it is provided that any river pilot "who shall first speak any seagoing vessel ascending or descending the river above Astoria," shall be entitled to half pilotage therefor. The pilot-ground of the Columbia and Wallamet river pilots reaches "from Astoria to the head of navigation," but from Astoria to the open sea beyond the bar is the pilot-ground of the bar pilots. Or. Laws, pp. 706–7, §§ 6, 7, 11. Astoria is a port of entry where foreign vessels bound to Portland stop to enter, and usually change the bar tug for a river one.

The argument of the libellant is that a competent and enterprising body of pilots is necessary to the security and convenience of commerce on these rivers, and to this end the law allows half pilotage to the pilot who first tenders his services to a vessel "ascending or descending" the same, and for the same reason will permit the tender of such services to be made before such vessel has reached Astoria, and as soon as she is inside the bar of the Columbia. In support of this proposition and argument, counsel cites *Steam-ship Co.* v. *Joliffe*, 2 Wall. 456; *Wilson* v. *McNamee*, 102 U. S. 572; *Horton* v. *Smith*, 6 Ben. 264; *The Traveler*, Id. 280; *The Georgia D. Loud*, 8 Ben. 392.

It is not denied that claims for pilotage are within the admiralty jurisdiction, and that a valid offer and refusal of pilotage service under the law giving half pay therefor establishes a claim for pilotage that may be enforced in this court. *The Glenearne*, 7 FED. REP. 604, and cases there cited. But the necessity of compulsory pilotage between Astoria and Portland, where sail-vessels are usually towed by steam-boats with licensed pilots on board, may well be questioned. Neither do I think that the usual arguments in favor of half pilotage as a means of encouraging and maintaining an active and competent body of pilots upon and about bars and other dangerous waters in the vicinity of or immediate approach to frequented harbors and ports, apply to the pilot-grounds between Astoria and Portland. The duties of the river pilots, though requiring skill and local knowledge, are comparatively simple and free from danger. A vessel at Astoria does not require a pilot until she is ready to ascend the river, and in the mean time can remain at anchor or the dock in comparative safety.

From the nature of the case, then, I am of the impression that a tender of pilot services by a river pilot to an ascending vessel below Astoria, on the bar pilotage ground, is invalid and of no effect.

The cases of *Horton* v. *Smith*, *The Traveler*, and *The Georgia D. Loud*, *supra*, cited in support of the sufficiency of the libellant's tender below Astoria, all relate to vessels bound through the passage in the East river called Hell Gate. By the law of New York, as construed by the court in these cases, the pilot-ground of a Hell Gate pilot extends at least from a point 17 miles eastward of Sands point on the sound to the city. For taking a vessel through the Gate channel certain fees are allowed, and for an offer and refusal of such pilot service half such fees are allowed. An additional compensation is also allowed for taking a vessel over any portion of the rest of this pilot-ground, which appears to extend east as far as the sound, before entering or leaving the channel, but nothing for a tender or refusal of services thereon.. The tenders in the cases cited appear to have been made within the pilotage ground of the pilots making them, and to vessels bound through the Hell Gate channel, though not then in it, and upon that ground they appear to have been upheld.

But in the case of *The S. & B. Small*, 8 Ben. 523, the same court held that a tender of services by a Hell Gate pilot to a vessel then S. S. E. of Block island, "bound to the sound," and through Hell Gate, was invalid. In support of this conclusion Judge Benedict says:

"It seems reasonable to say that the master of a vessel cannot be required to determine whether he will or will not accept the services of a pilot when his vessel is so far distant from the channel, as to which the pilot is supposed to be informed, and for which his services are needed, that the presence of a pilot on board for the purpose of navigating those channels would, under all possible circumstances, be absurd."

River pilots are not required to keep a pilot-boat, or cruise for vessels. There is no necessity for incurring such expense, and the compensation allowed them does not or ought not to warrant it. But, if a river pilot is allowed to make a valid tender of his services below Astoria, on the bar pilot's ground, the result will be an unfair combination between certain of the river pilots and the bar pilots, by which the former would be allowed practically to cruise on the bar-tugs or pilot-boats for vessels bound to Portland, and tender their services as pilots above Astoria, and thus be enabled to monopolize the business.

But beyond all question this exception is well taken upon the second ground assigned on the argument; for by section 1 of the act of October 25, 1870, (Sess. Laws, p. 51; Or. Laws p. 710, § 27,) it is provided "that no sea-going vessel, while navigating the Columbia or

Wallamet river, shall be required to take a pilot or pay half pilotage, if such vessel be towed by a tug or steamer." .

It is not alleged in the libel that the Glaramara made the voyage in question to Portland under sail, or that she was not towed here by "a tug or steamer." It would probably be better pleading to have raised this question by a peremptory exception, analogous to a plea in bar at common law, containing an allegation that the vessel made the voyage in tow of a steamer. But it is tacitly admitted that she was so towed, and counsel have submitted the question upon this exception, in the nature of a demurrer to the libel, for the omission of the allegation that the bark made the voyage under sail, and it will be so considered.

Counsel for the libellant admits that under the act of 1870, *supra*, the bark was not required to take a pilot or pay half pilotage unless it appears that she was not towed up the river, but insists that said act is invalid because it is an attempt to amend the act of 1865, *supra*, which required her to take a pilot or pay such pilotage whether towed or not, contrary to section 22 of article 4 of the constitution of the state, which enacts: "No act shall ever be revised or amended by mere reference to its, title, but the act revised or section amended shall be set forth and published at full length."

In my judgment this objection to the validity of the act is well taken. It is in substance and effect a material amendment of the act of 1865, made without the slightest regard to the mandate of the constitution, and in direct contravention of it. But it appears that the supreme court of the state, in *Grant Co.* v. *Sels*, 5 Or. 243, has decided that a repeal by implication—that is, without referring to the act repealed—is not within the purview of the constitutional prohibition, and is therefore valid. This court is bound by that decision. A similar question was before me in *Mayer* v. *Cahalin*, 5 Sawy. 355, when I took occasion to give my views of the constitutional provision, but gave judgment according to the ruling in *Grant Co.* v. *Sels*. But it may be that this act of 1870 is invalid even under the doctrine of the supreme court as announced in *Fleischner* v. *Chadwick*, 5 Or. 153; *Grant Co.* v. *Sels*, Id. 243; *Doland* v. *Barnard*, Id. 391. The act is entitled "An act further to amend the several acts relating to pilotage and towage on the Columbia bar and the Columbia and Wallamet rivers." This is at least a reference to the act of 1865 by its "subject" if not by its title. The distinction taken in the cases cited seems to be that if an act professes to be amendatory of another it

must be passed in conformity to the constitutional provision; but if not, although relating to the same subject, it is without its scope and operation. It is not, then, considered an amendment of any prior act, although it may change or repeal it by implication. ·

Admitting, however, that the act of 1870 is invalid, still this exception must be allowed. The act of 1865, under which the libellant claims half pilotage, was certainly passed in contravention of said section 22 of the constitution of the state. By section 1 of the act of October 21, 1864, (Com. Or. Laws 1864, p. 841, § 22,) the fees for pilotage between Astoria and the sea were specially prescribed, while "the fees of pilots on the river above Astoria" were to be "fixed" by the pilot commissioners. The act of 1865 professes to be amendatory of this act, and correctly refers to its title. The act of 1864 was itself amendatory of the act of October 17, 1860. It only contained two sections, and the attempt to amend it by the act of 1865 consisted in adding section 3 thereto, giving half pilotage to river pilots, as above stated. If the act of 1864 contained no provision on the subject of river pilotage in conflict with this added section, the amendment would be valid under any construction of the constitution. But the subject of pilotage above Astoria was already fully provided for in the first section of the act of 1864, to which this section 3 of the act of 1865 professes to be an amendment. The latter, so far as it goes, is in direct conflict with the former, in that it takes the subject of half pilotage on the rivers out of the control of the commissioners, and prescribes an absolute rule on the subject. It purports to amend the prior act by adding a section thereto—by the addition of new matter, and not a change of the old; but it is in fact an attempt to amend—change—section 1 of said act without specially repealing and re-enacting it as amended.

It follows that the libellant cannot recover in this case, because, either the act of 1865, giving the right to recover half pilotage, was void from its inception, as being passed contrary to the constitution, or the act of 1870 is valid, and repealed by implication so much of the act of 1865 as allowed half pilotage for an offer and refusal of services.

The impropriety of taxing vessels navigating the river in tow with the expense of pilotage in addition to towage is so apparent that the act of 1865, which was the first one that ever undertook to make pilotage compulsory on the rivers, was soon repealed, or attempted to be.

When a vessel is being towed along-side between Astoria and Portland by a river steam-boat with a licensed pilot on board, responsible for the navigation of both tug and tow, which, for the time being, are practically one, a more useless burden could not be imposed on commerce **than** to require the former to take a pilot or pay half pilotage for the offer and refusal of one.

The exception is allowed and the libel is dismissed.