B. F. BURCH, APPELLANT, *v.* R. P. EARHART, SECRETARY OF STATE, RESPONDENT.

LEGISLATIVE APPROPRIATION — GENERAL BILL, WHAT MAY CONTAIN. — A specific appropriation to pay an existing deficiency may properly be embraced in a general appropriation bill within the meaning of section 7, article IX, of the constitution.

DEFICIENCIES MAY BE PAID OUT OF GENERAL TAX.—Section 6 of article IX of the constitution does not require the legislative assembly to levy a special tax to pay deficiencies when there is an income from existing taxation, and other sources sufficient to pay such deficiencies, as well as the current expenses of the state.

IDEM—LEGISLATIVE DISCRETION.—It is for the legislative assembly, and it alone, to determine whether the receipts from existing taxation, with other sources of income, are sufficient without an additional tax to pay such deficiencies, as well as the current expenses of the state.

APPEAL from Marion County.  The facts are stated in the opinion.

*Bonham & Ramsey and Knight & Lord,* for appellants.

By the first separate answer it is alleged that the appropriation was exhausted prior to the time this claim was presented, and by the second separate answer that said claim is an expense in excess of the income of the state for the fiscal year ending September 9, 1878, and that no law had been passed levying a tax to pay said deficiency.

The first defense is based on the ground that in the absence of an appropriation the secretary of state has no authority in law to draw his warrant for the payment of any claim or salary, and the second defense on section 5, article 9, page 91 of the constitution, which provides that "whenever the expenses of any fiscal year shall exceed the income, the legislative assembly shall provide for levying a tax for the ensuing fiscal year, sufficient with other sources of income, to pay the deficiency, as well as the estimated expenses of the ensuing fiscal year.

If, however, the legislature has made an appropriation to pay the salary or claim specified in plaintiff's petition, the first defense is untenable in law, and if the expenses of the state for the fiscal year ending September 9, 1878, were not in excess of the income, the second defense is alike untenable.  (Van Sanford Pl. 355 and 6.)

Waiving for the present the objection urged on the court below that both of these separate answers plead conclusions of law, we claim, preliminarily, that it is the duty of the secretary of state, as auditor of public accounts, to audit and allow claims—where the claims are proper ones and authorized by law—even where no appropriation has been made for their payment.  His authority to allow claims and audit them, does not depend on the condition whether an appropriation has been made to pay them.  But when the

secretary comes to draw his warrant for the payment of any claim, then his authority does depend on the condition that an appropriation has been made to pay it.

The question then arises, has the legislature made an appropriation for the payment of the salary specified in appellant's petition? The amount of claims in excess of the appropriation for the fiscal year ending September 9, 1878, on the penitentiary fund, in which appellant's salary is included, is the sum of nine thousand five hundred and seventy-four dollars and ten cents. (Secretary of State's Report, 1878, p. 12.)

The legislature, at its last session, appropriated the sum of nine thousand five hundred and seventy-four dollars and ten cents, to pay the claims in excess of past appropriations. (Session Laws, 1878, p. 81, sec. 15.)

The supreme court of this state has decided that " the authority of the secretary of state to audit accounts and draw warrants depends on the condition that an appropriation has been made by the legislative assembly for their payment. .(4 Or. 136.)

This disposes of the first separate answer and also the second, because it is not material that the expenses of the state for the past fiscal year exceed the income if the legislature has made an appropriation to pay such deficiency. But it is not a fact that the expenses of the state have exceeded its income for the present fiscal year, as alleged. The expenses simply exceeded the appropriation, as reference to the reports of the secretary of state and state treasurer will show.

Section 5 of article 9 of the constitution provides that " an accurate statement of the receipts and expenditures of the public money shall be published with the laws of each regular session of the legislative assembly."

The reports of the secretary of state and treasurer of the " receipts and expenditures " are as much a matter of judicial cognizance as the " laws of each regular session." The reports of these officers show that there was a balance in the treasury of the income of the state belonging to the past fiscal year: coin, eighteen thousand nine hundred and

twenty-two dollars and ninety-one cents; currency, eight thousand and ninety-two dollars and thirty-three cents, aggregating the sum of twenty-seven thousand dollars in cash.

It is thus apparent that while the expenses of the state for the two past fiscal years were in excess of the sum appropriated by the legislature, the income of the state for the same years exceeded the expense several thousand dollars. The argument thus far has preceded on the theory that it is not necessary to resort to the revenue derived from the four-mill tax for current expenses (Session Laws, 1876, sec. 1, p. 28) to pay these claims in excess of the appropriation and included in the appropriation bill of 1878. The cash on hand in the treasury and to be derived from other sources of income is more than sufficient by several thousand dollars to pay all the claims included in this deficiency in excess of past appropriation. But it is asserted that the deficiencies included in section 15, page 88, Laws of 1878, are in conflict with section 6, article 9, of the constitution and void, for the reason that no tax was levied to pay such deficiency. Under that section of the constitution it is only necessary to levy a tax to pay a deficiency when the expenses of the state exceed the income.

The reports to which reference has been made conclusively show that the income of the state was greater than the expense for the two past fiscal years, and that these claims, for which provision has been made for payment by the last legislature, were only in excess of the appropriation and not of the income for the two past fiscal years. There was no deficiency in excess of income, but only of past appropriations, and the argument invoked under this section of the constitution can have no relevancy or right.

The amount of assessable property, as reported by the secretary of state, without any allowance for its increase for the two ensuing years derived from the four-mill tax to defray current expenses, will yield a revenue to the state, exclusive of the income derived from other sources, sufficient to meet the full amount appropriated by the last legislature, including the deficiencies in excess of past appropria-

tions, and leave a surplus in the treasury of more than ten thousand dollars. And although it is not necessary to the argument if the tax already levied—four-mill tax—is sufficient, with or without other sources of income, to pay this deficiency in excess of past appropriations, as well as the estimated expenses of the ensuing fiscal years, section 6 of article 9 of the constitution would not be infringed by applying the proceeds of that tax to pay that deficiency. The reasonable and proper construction of that section does not contemplate when the tax already levied is sufficient to pay the deficiency and estimated expenses, that further burdens shall be imposed on the people by levying an additional tax for such deficiency. That is only when the expenses exceed the income and the tax already levied, with other sources of income, are insufficient to pay the deficiency and estimated expenses, etc. But it may be claimed that to apply the four-mill tax to pay this deficiency in excess of past appropriations would violate section 3, article 9, of the constitution in this, that it would divert the tax from the object to which only it could be legally applied. This could hardly be a proper construction of that section, even if the expense exceeded the income, much less when it simply exceeded the appropriation, for the reason, such tax, in applying it to the payment of this deficiency, would not be diverted to objects dissimilar or inconsistent with the purposes for which it was levied or to be applied. But when a tax is levied and set apart for a specific object, as in the case of the soldiers' relief fund, it cannot be diverted to other purposes without coming in conflict with this section 3, except, perhaps, when the object for which the tax was levied has ceased to exist or been attained. In that event the legislature would undoubtedly have the authority to apply the surplus to any legitimate object of public expenditure. The view we have already taken, and the only questions raised by the answer of the defendant, render the further pursuit of this argument unnecessary. That the legislature did appropriate funds to pay this deficiency (Session Laws, 1878), and that the expense of the state did not exceed the income, are certainly beyond question. Besides, there are

funds already in the treasury belonging to the income of the
past fiscal year sufficient to pay the full amount of this de-
ficiency in excess of past appropriations, without the neces-
sity of resorting to the revenue derived from the four-mill
tax for the ensuing fiscal years.    The object of this section
of the constitution was to prevent riders from being en-
grafted on appropriation bills in which some job lie con-
cealed, and to require all bills that appropriate the public
money to stand on its merits.    It is a rule adopted by the
court, and too well settled to require citation, that it is with
extreme hesitation that courts pronounce a law unconstitu-
tional, and only then when the infraction is plain and pal-
pable and free from all reasonable doubt.    (5 Or. 245;
Cooley's Const. Lim. 181.)

*J. A. Stratton,* for respondent.

In the argument below, stress was laid upon the asserted
fact that there were funds derived from the excess of receipts
between September 1, 1876, and September 1, 1878, suffi-
cient to pay the claim on which this proceeding is based.
If such be the fact, it should have been recited in the writ.
The writ is the complaint (Civ. Code, 232, sec. 590),
and the complaint "shall contain * * * a plain and
concise statement of the facts constituting the cause of
action.    (Civ. Code, 118, sec. 65.)

It is contended that this is a fact of which the courts will
take judicial notice under section 698 of the code.    But
that section provides, not a rule of pleading, but the man-
ner of proving certain facts.    Nor does it comprehend the
class of facts to which plaintiff seeks to apply it.    The court
will not take judicial knowledge of the condition of the state
finances.    This must be proved like any other fact, except
as provided in section 733, subd. 1, Civil Code.

Again, what is there to show that such alleged excess had
not been drawn out by prior warrants upon such fund?
Conceding that there was an excess on the first day of Sep-
tember, 1878, it does not follow that it remained on hand
until the twenty-sixth of October, 1878.    The secretary is
authorized to draw warrants upon a particular fund only

to the amount of the appropriation therefor. (*Brown* v. *Fleischner*, 4 Or. 132.)

Defendant's answer shows that the appropriation of 1876 for payments of this class of claims is exhausted. So much of the general appropriation law of 1878 as attempts to provide for the payment of deficiencies, is unconstitutional: 1. Because this subject is not expressed in the title of the act. (Laws 1878, p. 77; Const., Art. IV, sec. 20.) 2. Appropriations for deficiencies can not be coupled in the same act with appropriations for current expenses. (Const., Art. IX, sec. 7, Code, p. 91.) 3. No special tax has been levied to meet this liability. (Const., Art. IX, sec. 6; Id., sec. 2.) No part of the revenue of the state derived from taxation is applicable to the payment of this claim. (Laws of 1876, p. 98, secs. 1 and 2; Const., Art. IX, sec. 3.)

By the Court, KELLY, C. J.:

By an act, approved October 20, 1876, making appropriations for the expenses of the state government, the sum of forty thousand dollars was appropriated for the general expenses of the penitentiary. It seems to have been insufficient to defray the salaries and other expenses of that institution for the two years commencing on the second Monday of the year 1876, and that there was left a deficiency of nine thousand five hundred and seventy-four dollars and ten cents.

An act entitled "An act to provide for the ordinary expenses of the state government, and general and specific appropriations," was approved October 19, 1878, which appropriated funds for the ordinary expenses of the state government and also the following item: "Penitentiary fund: for deficiencies in excess of past appropriations, nine thousand five hundred and seventy-four dollars and ten cents."

The appellant was the superintendent of the penitentiary and, as such, became entitled to four hundred and fifty dollars, as a salary for the quarter ending August 31, 1878; but, owing to the deficiency before referred to, it was not paid when it became due. On the twenty-first day of Octo-

ber, 1878, he applied to the respondent as secretary of state, and requested that, as auditor of public accounts, he should audit the claim and issue a warrant on the state treasurer for the payment of the four hundred and fifty dollars above referred to. For the reasons heretofore stated, the respondent refused to do so. The appellant then applied to the judge of the circuit court for Marion county for a writ of mandamus commanding respondent to audit his claim and issue a warrant for the amount due, or show cause why he refused to do so.

The respondent answered the writ and gave reasons for refusing to audit and allow the claim, which are substantially as follows: That the appropriation of forty thousand dollars for the general expenses of the penitentiary, made by the act approved October 20, 1876, was exhausted before the time when appellant's claim was presented to him; that warrants had already been drawn upon that fund to the full amount of the forty thousand dollars; that appellant's claim is an expense in excess of the income of the state for the fiscal year ending September 9, 1878, and that no law was passed by the legislative assembly levying a tax to pay such deficiency. The appellant filed a general demurrer to the answer, which was overruled by the circuit court, and failing to further plead, the writ was dismissed. From this decision an appeal was taken. It is now urged by respondent that the writ of mandamus ought not to be made peremptory for the following reasons:

1. Because the appropriation for the deficiency of nine thousand five hundred and seventy-four dollars and ten cents in the penitentiary fund is not expressed in the title of the act approved October 19, 1878, and is therefore in contravention of article 4, section 20, of the constitution, which provides that "every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." The title of the act referred to is as follows: "An act to provide for the ordinary expenses of the state government and general and specific appropriations."

The appropriation made in this act to pay the deficiency

in the penitentiary fund is a specific appropriation for that purpose, and is as clearly expressed in the title as any other in the act. To specify the several appropriations more minutely would be to make the title of the act as long as the act itself, which surely was never contemplated by the framers of the constitution.

2. It is urged that appropriations for deficiencies can not be embraced in the same act with appropriations for the current expenses of the state. In support of this position, respondent refers to article 9, section 7, of the constitution: "Laws making appropriations for the salaries of public officers and other current expenses of the state shall contain provisions upon no other subject." And he claims that current expenses of the state mean expenses to be incurred in the ordinary administration of the state government after the passage of the appropriation bill, and that they do not include deficiency items. We think these words were not intended by the framers of the constitution to be taken in that restricted sense. If it had been so intended, they doubtless would have used the words "current expenses of the state during the biennial term," or some other apt words to express that meaning. Current expenses of the state mean the ordinary running liabilities incurred by the state in the administration of its offices from year to year. The object had in view by the insertion of that section in the constitution was to prevent the introduction of such matters of legislation into appropriation bills as were not germane, and thus make these bills the vehicle of carrying through matters of doubtful expediency, such as could not be passed upon their own merits.

3. The next and last reason urged by respondent why the writ ought not to be made peremptory, is, that no special tax was levied by the last legislative assembly, to pay the deficiencies of the last fiscal year as required by article IX, section 6 of the constitution. That section provides that: "Whenever the expenses of any fiscal year shall exceed the income, the legislative assembly shall provide for levying a tax for the ensuing fiscal year sufficient, with other sources

of income, to pay the deficiency, as well as the estimated expense of the ensuing fiscal year."

Respondent contends that the claim of appellant was an expense in excess of the income of the state for the last fiscal year, and that it can only be paid by the levy of a special tax for that purpose, even though the revenues arising from taxation and other sources of income shall be sufficient to pay that deficiency as well as the estimated expense for the fiscal year ending on the second Monday of September, 1880. We think that is not the proper construction to be placed on that section of the constitution. If it be conceded that the receipts from taxation with other sources of income are sufficient to defray all the expenses of the state administration, and pay, in addition, all the deficiencies of the past fiscal year, why should the burden of an additional tax be imposed upon the people merely to accumulate a fund in the state treasury, to lie there until it shall be appropriated by some future legislature? We think that neither the letter nor the spirit of the constitution requires that such a construction should be placed upon that instrument. On the contrary, we hold that the legislative assembly is required to levy an additional tax to pay deficiencies only when all other sources of income are insufficient to pay them, and the other appropriations for the current fiscal term of two years. And whether these sources of income were sufficient for that purpose or not was a question for the legislative assembly, and for it alone to determine. Owing to the increase of taxable property, and the probable decrease in the expenditures of the state administration, it doubtless concluded that no further taxation was required to meet all demands specified in the act making appropriation for the current fiscal term of two years; as the legislature failed to impose an additional tax to pay deficiencies, the fair presumption is that none was needed, and whenever an appropriation is made to pay any deficiency there is also a presumption that there are or will be funds in the treasury from existing sources of income, sufficient to pay that as well as all other appropriations made by the legislative assembly.

An appropriation having been made to pay the claim of

appellant we hold that it is the duty of respondent to audit that demand and draw his warrant on the treasurer for the amount found to be due.

The judgment is reversed and a peremptory mandamus ordered to be issued.