## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF OREGON,

## OCTOBER TERM, 1882.

EDWARD B. WATSON, *Chief Justice.*
WILLIAM P. LORD, } *Associate Justices.*
JOHN B. WALDO,

## STATE *v.* BROWN.

CLAIMS AGAINST STATE—ALLOWANCE BY SECRETARY.—The decision of the secretary of state upon a claim against the state, presented to him for allowance, is not conclusive upon the rights of the parties in a collateral proceeding. Such decisions are neither judicial determinations, nor invested by law with the effect of such determinations.

IDEM.—The presentation of a claim against the state, and its allowance by the secretary, do not constitute an account stated so as to preclude an inquiry as to its correctness, in an action at law, brought by the state for a sum of money alleged to have been unlawfully allowed in said account, and paid through mistake.

APPEAL from Marion County.

This was an action at law, brought by the state, against Mart. V. Brown to recover the sum of $18,295 66 alleged to have been overpaid him through mistake, on account of materials furnished and printing done by him for the state, during his official term as state printer, from September, 1874, to September, 1878. The complaint contains sixty-seven different counts, each expressing a distinct cause of

action, but as they are all in the same form, the citation of a single one, for example, will suffice. The first count in the complaint, following the allegation of the defendant's official character, is as follows:

"2. That between the 14th day of September, 1874, and the 31st day of October, 1874, said defendant, in the discharge of his official duties as such state printer, printed for said plaintiff, and furnished paper for 100 copies each of the following named bills, to-wit: Senate bills numbered respectively 1, 2, 3, and house bills numbered respectively 10, 15, 16, 18, 21, 23, 24, 26, 27, 29, 34, 42, and 111, of the eighth regular session of the legislative assembly of the State of Oregon, each of said bills consisting of one printed page. That said work done and material furnished consisted for each of said bills of the following named items, and defendant thereby became entitled to receive from the plaintiff for each of said bills, the amounts named opposite the several items, as next hereinafter specified, and no more; that is to say:

3496 ems composition, at $1.25 per 1000 ems......$4 37
11-100 of one ream of paper, at $10 per ream...... 1 10
1 token (of 240 sheets) of presswork, at $1 per token. 1 00
Folding.........　............................
Stitching....　.............................
　　Amounting in all to the sum of $103 52.

"3. That said defendant, on or about the 26th day of October, 1874, presented his bill to plaintiff for said work and material, in which he charged therefor the sum of $204, which said sum this plaintiff, being then ignorant of the facts hereinbefore alleged, and acting under a mistake as to the amount actually due, allowed and paid."

The defendant demurred to the complaint on the grounds:

"1. This court, as a court of law, has no jurisdiction of

the subject matter of· the action or complaint. 2. The plaintiff cannot, in a court of law, surcharge, falsify or open up an account which has been stated or settled between the parties. 3. The complaint does not state facts sufficient to constitute a cause of action."

The demurrer was overruled and the defendant answered. After denying the material allegations in each count, the answer concludes with the following: "And for a further and separate answer and defense herein, defendant avers that each and every item allowed, and each and every dollar paid to him by the state of Oregon for work done, or for material furnished, in the public printing, as set forth in the complaint, was duly audited and paid to him by the warrants of the secretary of state drawn upon the treasury of said state."

The state replied as follows: "Denies that each and every item allowed, or any item allowed,or that each and every dollar to him paid by the state of Oregon, or any amount to him paid by the state of Oregon for work done or for material furnished in the public printing mentioned in the complaint, was duly audited or allowed or paid by the warrants of the secretery of state, drawn upon the treasurer of said state, or otherwise." The issues thus presented were tried by the court below, whose findings and judgment were as follows:

"The court finds as matters of fact:

1. That the defendant at all the times mentioned in the complaint was the duly elected, qualified and acting state printer of the state of Oregon.

2. That in doing the work mentioned in plaintiff's complaint the defendant furnished for the use of plaintiff only 323.56 reams of paper, which at ten dollars a ream, the price allowed by law, amounted to $3,235 60. That the defen-

dant, in the bills presented to the state, received pay for 1292.26 reams, and received from plaintiff therefor the sum of $12,922 60.

3. So far as the amount of composition is concerned, the court finds that the work was reported to be done by the expert as done by Brown, and I allow for this work as so found.

4. As matter of law, the court finds that the finding of the secretary of state as to the amount of work done was a matter on which he was called upon to use his discretion, and such determination in the absence of fraud is binding on the state.

5. That the amount of paper furnished is charged by the ream, and more reams were charged for than were actually furnished. For this excess, the defendant should not be allowed.

6. What constitutes a ream of paper is a question of law, to be determined by the definition of the word, and was not a matter to be found by the secretary of state.

7. It is therefore considered and adjudged by the court that plaintiff have and recover of the defendant the sum of $9,687 and his costs and disbursements."

The appeal was taken by the defendant Brown from this judgment. No exceptions appear to have been taken during the progress of the cause through the court below; but appellant relies upon the record set forth above as disclosing the errors assigned in the notice of appeal. The errors assigned are. 1. Overruling defendant's demurrer to the complaint. 2. The 2nd finding of fact; and the 5th and 6th findings of law, above set forth. 3. Rendering said judgment in favor of the state.

*Bonham & Ramsey*, for appellant.

*W. G. Piper and J. A. Stratton*, for respondent.

By the Court, WATSON, C. J.:

We have first to determine the nature and effect of the decisions of the secretary of state upon claims against the state, which have been presented for his allowance. Appellant contends that they should be regarded as judicial determinations, and conclusive as to the rights of both the claimant and the state, in all collateral proceedings. This proposition involves the assumption that the secretary, in auditing claims against the state, exercises judicial power. Power vested in an administrative officer to act, at his discretion, is not necessarily judicial. Mr. Starkey thus clearly defines the distinction between them:

"There is a wide distinction between a special authority to act, under particular circumstances, and a judicial authority to act in particular cases. So long, in either case, as the party acts within the limits of his authority, he is of course justified in what he does, and in either case if he plainly exceed the limits of his authority he is without justification; the material difference is this, that in the former case, *i. e.*, where he has a mere authority to execute, it is open to inquiry whether facts existed which warranted his act; in the latter, where he acts judicially, in a matter within his jurisdiction, his adjudication is usually conclusive upon the question whether the particular facts warranted that judgment, and to protect him from an action of trespass." (3 Stark. Evid., 1,150.)

But under the constitution of this state, the secretary cannot exercise judicial functions. Art. 3 provides for the distribution of the powers of government into the three great departments—the "legislative, the executive, including the administrative, and the judicial;" and declares "that no person charged with official duties under one of the departments, shall exercise any of the functions of another, except

as in this constitution expressly provided." The office of secretary of state is provided for in art. 6, which creates the administrative department, while by art. 7, creating the judicial department, all the judicial power of the state is vested in a supreme, circuit and county courts, with authority to the legislature to invest justices of the peace with limited judicial powers, and to create municipal courts to administer the regulations of incorporated towns and cities.

There is nothing in the constitution expressly authorizing the secretary to exercise any of the functions of the judicial department, and, in the face of the inhibition just cited, the legislature is incapable of conferring any such power upon him. (*People* v. *Draper*, 15 N. Y., 532; *State* v. *Hastings*, 10 Wis., 532.)

But if the correctness of this construction of the constitutional provisions above referred to could be deemed at all questionable, still we should feel compelled to hold that neither by the constitution nor laws has the secretary of state been clothed with any judicial power whatever. By sec. 2 of art. 6 above referred to, he is declared to be, by virtue of his office, "auditor of public accounts." Sec. 11 of the act of June 2, 1859, entitled "An act to regulate the treasury department," is as follows:

"Sec. 11. The secretary of state shall superintend the fiscal concerns of the state, and manage the same in the manner prescribed by law; * * * To examine and determine the claims of all persons against the state in cases where provisions for the payment thereof shall have been made by law, and to endorse upon the same the amount due and allowed thereon, and from what fund the same is to be paid, and draw a warrant on the treasury for the same; and he shall report to the legislature, at the commencement of each regular sessisn, a complete list of all ac-

counts so audited, together with a general statement of the fiscal concerns of the state; *Provided*, that no account shall be so audited, except the same be duly verified by the oath, affidavit or affirmation of the claimant or his agent, and all accounts shall be kept on file in his office; to enter in a book to be kept for that purpose, an abstract of all warrants drawn on the treasury, showing the date, number, name of claimant, the amount claimed, the amount allowed thereon, and from what fund to be paid."

"Sec. 12. Whenever any account shall be presented to the secretary of state for settlement, he may require the person presenting the same, or any other person or persons, to be sworn before him touching such account, and when so sworn, to answer orally, or in writing, as to any facts relating to the justice of the account. If any person interested shall be dissatisfied with the decision of the secretary, on any claim, account or credit, it shall be the duty of the secretary, at the request of such person, to refer the same, with his reasons for his decision, to the legislative assembly, and all persons having claims against this state shall exhibit the same, with the evidence in support thereof, to the secretary, to be audited, settled and allowed within two years, and not afterwards. And in all suits brought in behalf of the state, no debt or claim shall be allowed against the state as a set off, but such as have been exhibited to the secretary, and by him allowed or disallowed, except only in cases where it shall be proved to the satisfaction of the court that the defendant, at the time of trial, is in possession of vouchers which he could not produce to the secretary on account of absence from the state, sickness or unavoidable accident."

These are the provisions of law upon which appellant claims that the decision of the secretary of state in allowing or disallowing a claim against the state, is a "judicial deter-

mination of such a claim, and as binding upon the parties as the judgment of any court."

It will hardly be contended that his designation in the constitution, as "auditor of public accounts," by itself, confers any judicial power on the secretary of state. Abbott defines the powers of such an officer as follows: "An officer of government, whose function it is to examine, verify and approve or report accounts of persons who have had the disbursement of government moneys, or have furnished supplies for government use." (1 Abb. Law Dict., 111.)

Burrill's definition of the term "auditor" is this: "An officer or person whose business is to examine and verify the accounts of persons entrusted with money. A person appointed to examine a particular account and state or certify the result; in doing which he is said to audit the account." (1 Burrill Law Dict., 163.)

In every organization of government, the office of public auditor is to be found in the administrative department, and even where he is empowered to act, upon his official judgment, his functions are only *quasi* judicial. If his determinations upon issues properly presented to him are in any case to be held conclusive upon the parties in collateral proceedings, it is not because they involve the exercise of judicial power or absolute discretion, but because such conclusive effect has been imparted to them by competent constitutional provision or legislative enactment. Without his allowance, the claimant cannot obtain payment of his demand; but the rejection of his claim does not determine his right to payment, unless declared to have such effect by competent authority.

Many decisions are to be found in the reports of the several states, which hold that mandamus will lie to compel a public administrative officer, charged with the duty of aud-

iting the public accounts, to allow claims, where the undisputed facts show a clear legal right in the claimant to have the same allowed and paid out of the public treasury. (*McCauley* v. *Brooks*, 16 Cal., 11; *Smith* v. *The Controller of the State*, 18 Wend., 659; *People* v. *Stout*, 23 Barb., 339; *Agricultural Society* v. *Bates & Lippincott*, 61 Ill., 490; High's Extraordinary Legal Remedies, secs. 104–6, and cases cited.)

This doctrine is fully sustained by the decision of this court in *Burch* v. *Earhart*, 7 Or., 58. These decisions are irreconcilable with the idea that the determinations of such officers, in auditing claims against the public, are of the same nature, and have the same force, as the judgments rendered by judicial tribunals, in proceedings of a judicial character. Mandamus will lie, in some instances, to compel the exercise of judicial functions, but not to control the free operation of judicial discretion. When the public auditor has exercised his discretion and pronounced his decison, then if his action is to be regarded as judicial, his power is ended, and even though his decision appear to be clearly erroneous, he cannot be compelled to correct it by mandamus. (*Exparte Taylor*, 4 How. U. S. R., 3.)

In the case of the *State* v. *Hastings*, 10 Wis., 525, it was held that the state treasurer might lawfully refuse to pay a warrant drawn on him by the secretary of state, for a sum audited and allowed by the latter, upon an illegal demand. The constitution of Wisconsin, like our own, declared that the secretary of state should be *"ex-officio"* auditor. In *Wall* v. *County of Monroe*, 13 Otto, 74, the supreme court of the United States held, that to an action against the county, upon certain county warrants, issued upon claims audited and allowed by the county court, brought by a *bona fide* holder for value, any defense might be set up by

the county, which would have been available if the action had been brought by the original payee, and allowed an off-set against such payee. Justice Field concludes the opinion in the case with the following observation:

"The cancellation of the warrants originally issued, and the substitution of others in their place, did not change their character. Neither that proceeding nor the original auditing of the claims of Gallagher had the force of a judicial determination, concluding either him or the county. There was no litigation on the subject between adversary parties, which could give to the result any greater efficacy than the award of an ordinary board authorized to audit claims against a municipal body." Citing *Shirk* v. *Pulaski County*, 4 Dill., 209. In the case of *The County of Marion* v. *Phillips*, 45 Mo., 75, the court held that the action of the county court in allowing a claim of the county collector against the county, through a mistake of fact, was not *res adjudicate* so as to bar a suit by the county to recover back the amount allowed. That in such cases the judges of the county court act merely as the fiscal agents of the county, and their mistakes can be inquired into and corrected, as well as those of individuals acting in their own behalf. Judge Bliss, in the course of the opinion, says: "The county judges are in most matters the agents and representatives of their respective counties. As a board called the county court, they audit claims against it, make appropriations, assess taxes, loan and distribute the school fund, take charge of its poor, direct the building and supervision of roads and bridges, erect and take charge of the public buildings, look after, and settle with its financial agents, and in general transact the county business. Many of their acts, as in auditing claims, and settling the accounts of treasurer and collector, have been sometimes called judicial, because it is incumbent on the court to decide—to ad-

judicate as it were—upon the claim or account. But this decision is more like that of a party or agent, than of an impartial tribunal with the parties before them. They decide very much as every private person or financial agent of a firm or corporation decides upon an account presented. They decide as all public auditors decide when claims or accounts are presented for adjustment, and if their action is judicial, then our auditor of public accounts is so far a judge, and holds a court of record; for in auditing claims his duties are precisely those of the county court.  *  *

I have thus spoken of the action of the court upon claims against the county because it is clearly analogous to its action in settling with collectors, &c. This settlement of accounts with collectors lacks one of the essential elements of ordinary judicial action, there being no parties litigant, no adverse interests to be adjusted, no one to be heard but the officer; and it also possesses one of those elements, inasmuch as it is to be made and the accounts adjusted according to law. But so are all settlements and adjustments between parties. The rules that govern do not so much decide the question, as the relation of the body, whether it is to adjust controversies between the parties, or whether it represents one of the parties."

In the case of *Washington County* v. *Parlier*, 5 Gilman, 232, the supreme court of Illinois, in discussing the same question, use language equally strong and explicit. They say: "In making this settlement the commissioners act as agents of the county, and do not adjudicate as a court. They could enter up no judgment against the defendant for the balance found due, nor have they any means of enforcing payment of such balance except by a resort to the ordinary courts of law. As the fiscal agents of the county, their mistakes may be inquired into and cor-

rected, as well as those of an individual acting in his own behalf." To the same effect are the decisions in *State* v. *Roberts*, 62 Mo., 388; *Cumberland Co.* v. *Edwards*, 76 Ill., 544; *Commissioners* v. *Keller*, 6 Kansas, 510.

In the case last cited, the supreme court of Kansas held that it was error in the lower court to instruct the jury that the allowance of the claim in controversy by the board of county commissioners, "is an adjudication as binding on the parties as the judgment of a court." The same doctrine is maintained in the decision of this court, in *Grant County* v. *Sels*, 5 Or., 243. It was held in that case that money claimed by and paid to the county judge as a part of his salary, which he was not entitled to, could be recovered back in an action brought by the county against him, although his claim therefor had been audited and allowed by the county court.

A careful examination of the provisions of the statute above quoted, relating to the powers and duties of the secretary of state, must, we think, inevitably produce the conviction that the legislature, in enacting them, neither intended nor attempted to confer judicial authority on that officer in the matter of auditing claims against the state, or to make his decisions in relation thereto final and conclusive upon the rights of the parties, as it possibly had the power to provide. By these provisions the secretary is charged with the superintendence and management of the fiscal concerns of the state; and the examination and allowance of claims against the state are enumerated in a subdivision of the same section, as duties falling under this general head. It is plainly the intention of the subdivision that the secretary is to examine, determine, &c., the claims presented to him against the state as the superintendent and manager

of its fiscal concerns—in other words its financial agent—and in no different character.

The accounts presented must be verified, and the secretary may, in his discretion, require the claimant or other persons to be sworn touching the account. But it does not follow that he is confined to the sworn testimony in determining whether the account should be allowed. The claimant has no voice in the matter, except in being permitted and required to verify his claim. He cannot insist that any further testimony shall be taken; or if the secretary elects to hear other testimony, the claimant cannot dictate what or how many witnesses shall be examined.

The statute, by providing for a reference of the claim to the legislature when the claimant is not satisfied with the secretary's decision, plainly indicates the sense of its framers as to the administrative character of his functions. But this is not all. The statute expressly recognizes the right of a claimant to set-off a claim, otherwise proper, which has been disallowed by the secretary in any suit brought against him on behalf of the state. And under the peculiar circumstances enumerated in the statute, he is allowed to set-off claims never presented to or acted on by the secretary.

We fail to discover any intention on the part of the legislature to give the secretary's decisions the final and conclusive character which belongs to judgments pronounced by the ordinary judicial tribunals, or to impart such conclusive effect to them by mere statutory enactment; and it is not to be presumed that the courts have been divested of their ordinary jurisdiction. Nor should the fact that the secretary is an administrative and not a judicial officer be lost sight of. In the matter of the application of Hervey W. Cooper, 22 N. Y., 67, Judge Selden expresses the following views upon this subject:

"Although in the general distribution of powers and duties among the great departments of the government, many are found, the characteristics of which are so marked, that they can with certainty be referred to the appropriate department, yet this is by no means the case with all. The lines between the various departments are not and cannot well be very precisely defined, and there are many duties which may with equal propriety be referred to either. Duties of this class, and they are very numerous, necessarily take their character from the departments to which they are respectively assigned. The same power, which, when exercised by one class of officers not connected with the judiciary, would be regarded and treated as purely administrative, because at once judicial when exercised by a court of justice." See also *The State ex rel. Drake* v. *Doyle*, 40 Wis., 188.

We therefore conclude that the decision of the secretary in the case at bar, by which Brown was allowed the sum of nine thousand six hundred and eighty-seven dollars for paper which he never furnished, as found by the circuit court, was neither a judicial determination nor conclusive upon the rights of the parties by virtue of any provision of law, and constituted no bar to the recovery by the state in this action. We hold that the secretary of state is invested with a certain measure of official discretion in the matter of auditing claims against the state. That while he acts within its proper sphere, he is not only justified, but exempt from judicial control. But that the rights of the parties, except in relation to the particular remedy he is authorized to administer, are in no wise determined or affected by his decisions, except so far as they may afford a presumption of being in accordance with the facts.

Another point contended for by the appellant is that if

the auditing and allowance of a claim by the secretary should be deemed to be of no effect as a judicial determination, still it would operate to convert the same into an account stated, and bar any recovery in an action at law where mistake only is alleged. But a stated account in this sense, derives all its force from the agreement of the parties, express or implied. It is, in effect, a new contract in writing, and is equally conclusive in an action at law. But it presupposes parties capable of making a written contract, which will bind them in the absence of fraud and mistake, although one or both may have relinquished valid demands to secure the settlement, which, if they had been allowed, would have sansibly affected the final balance. (*Homes and Drake* v. *D'Camp*, 1 Johns., 34.)

In the case here, there was no opportunity for any agreement. The secretary did not and could not have entered into any contract with the claimant. He was authorized to allow just what was due the claimant, according to his judgment, and was not justified in allowing anything beyond. If the state had contracted to pay so much, the secretary's power to audit the claim and allow what should appear to be due thereon, did not authorize him to enter into a new contract with the claimant through the form of a stated account, by which the latter might assert a claim to a greater amount than should be found due him under his original contract with the state.

We think the secretary has no power to state an account with a claimant which will bind the state in this manner. But if we were at all inclined to the opposite view, we should feel bound to disregard the objection upon the authority of *Grant County* v. *Sels, supra*, which unmistakeably holds that an action like the present in effect, for money had and received will lie to recover back money so

paid out of the public treasury. Indeed, we regard that decision as virtually settling all the points in this case, except the one first considered. We are fully satisfied that there was no error as alleged by the appellant in the judgment of the circuit court, and it must be affirmed with costs to the respondent.

Judgment affirmed.